**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Civil Action No. 3:21-cv-330**

| | |
|---|---|
| DEMEATA O. WATSON ROBINSON,<br><br>     Plaintiff,<br><br>vs.<br><br>DRIVEN BRANDS SHARED SERVICES,<br>LLC, AND TALENTBRIDGE, INC.,<br><br>     Defendants. | **DEFENDANT EMPLOYEE<br>RELATIONS ASSOCIATES, INC. d/b/a<br>TALENTBRIDGE, INC.'S BRIEF<br>IN SUPPORT OF RULE 12(b)(6)<br>MOTION TO DISMISS** |

NOW COMES Defendant Employee Relations Associates, Inc. d/b/a TalentBridge ("Defendant" or "TalentBridge"),[1] through counsel, prior to answering Plaintiff's Complaint, and respectfully submits this Brief in Support of Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, as more particularly set forth below:

**I.     Introduction**

Plaintiff's bares-bones Complaint contains little more than a conclusory recitation of some, but not all, of the essential elements of the causes of action she pleads against TalentBridge and Driven Brands Shares Services, LLC ("Driven Brands"). Most remarkably, Plaintiff's Complaint is virtually devoid of any factual allegations to support any of her claims against TalentBridge. Plaintiff attempts to attach liability to TalentBridge for the conduct of two Driven Brands employees, while providing no factual support of basis for *why* TalentBridge should be held liable for such actions. There is not a single allegation in Plaintiff's Complaint that establishes that TalentBridge was responsible for the alleged discrimination, hostile work environment, or retaliation she claims to

---

[1] The Complaint incorrectly identifies Defendant TalentBridge as "TalentBridge, Inc." The correct name of the company is "Employee Relations Associates, Inc. d/b/a TalentBridge."

have suffered. Nor does the Complaint offer any rational basis for TalentBridge to be held liable for negligent hiring, negligence, or intentional infliction of emotional distress. The Complaint utterly fails to allege that TalentBridge engaged in *any* conduct that would form the basis of liability against it.

It is not surprising that Plaintiff's Complaint lacks any factual support to state a claim against TalentBridge. In fact, this is Plaintiff's <u>second</u> federal lawsuit alleging discrimination arising from her prior employment at Driven Brands. In July 2019, Plaintiff brought a lawsuit against Driven Brands and Alexander Smith alleging violations of Title VII of the Civil Rights Act of 1964. *See* Case No. 3:19-cv-00375-MOC-DCK (W.D.N.C.).[2] Nowhere in that lawsuit, nor in the EEOC charge that preceded that lawsuit, did Plaintiff make any claim that TalentBridge violated her rights or was liable to her in any manner whatsoever. Now, nearly two years after her first lawsuit was filed and dismissed by the Court, Plaintiff seeks a second bite at the apple, attempting to include TalentBridge as a party despite the fact that now, as before, there are no facts to support such claims.

In addition to the factual deficiencies in Plaintiff's Complaint, her pleading fails to allege a sufficient legal basis for relief as well. Plaintiff's Complaint fails to state a claim upon which relief can be granted because it relies solely on unsubstantiated legal conclusions. Plaintiff does not and cannot allege specific factual allegations that push her right to relief above the speculative level, as required by Rule 8(a) of the Federal Rules of Civil Procedure. With respect to her discrimination, hostile work environment, and retaliation claims, Plaintiff recites only partial elements of each *prima facie* case, without sufficient basis to establish a plausible inference that she is entitled to the relief she seeks. Such bare assertions do not satisfy the notice pleading requirements, as construed by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, *Ashcroft v. Iqbal*, and their progeny,

---

[2] That lawsuit was dismissed in January 2020 on a 12(b)(6) motion because Plaintiff's Title VII claims were untimely. *Watson Robinson v. Driven Brands Shared Servs.*, 2020 U.S. Dist. LEXIS 15317, at *5 (W.D.N.C. Jan. 30, 2020).

1142896 v1

and fail to establish a plausible inference of discrimination. Further, Plaintiff fails to allege conduct sufficiently extreme or outrageous to constitute a cognizable claim of intentional infliction of emotional distress, and without a cognizable state tort claim, Plaintiff's claim of negligent hiring, supervision, and retention fails as well. Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. R. 12(b)(6).

## II.    Facts Pleaded in Plaintiff's Complaint

Plaintiff is a black/African-American female. [Compl. ¶ 27].[3] She claims to have been employed by Driven Brands Shared Services, LLC ("Driven Brands") in October 2019 as a Payroll Analyst Specialist. [Compl. ¶ 1]. Beginning on her first day of employment, and continuing with unspecified frequency until her termination in February 2020,[4] Plaintiff claims she was subjected to unlawful discrimination and harassment by her Driven Brands' supervisor named Alexander Smith ("Smith"). [Compl. ¶¶ 3-13]. Such alleged discrimination and harassment by Smith included Smith's monitoring of Plaintiff as she worked; greeting of employees with a casual, "yo;" reference to African-American women as "girls;" following Plaintiff to the restroom; complaining that she could not see what was on Plaintiff's personal cell phone; and complaining that Plaintiff refused to speak with her [Compl.    ¶¶ 4, 8, 9, 11]. Plaintiff claims that, at some point, she reported the alleged discrimination and racially hostile work environment at Driven Brands to TalentBridge. [Compl. ¶ 14]. Some indeterminate amount of time later, Plaintiff claims that her employment was terminated. [Compl. ¶ 15]. Plaintiff pleads no facts that allege she suffered any discrimination or retaliation (including termination) by TalentBridge. Instead, her Complaint either focuses on actions by

---

[3] TalentBridge does not concede that any of Plaintiff's pleaded allegations are true, though the Court must accept them as such for the purpose of ruling on the instant motion. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994).
[4] While not material to this motion, it is evident that Plaintiff's Complaint misstates her dates of employment, as Plaintiff's previous lawsuit arising from the same allegations was dismissed in January 2020. *Watson Robinson,* 2020 U.S. Dist. LEXIS 15317, at *5 (W.D.N.C. Jan. 31, 2020).

1142896 v1

employees of Driven Brands, or fails to attribute the alleged discriminatory conduct to either of the two defendants.

Plaintiff filed her Complaint on May 27, 2021 in the Superior Court Division of Mecklenburg County Court. On July 9, 2021, TalentBridge removed this action to federal Court.

## III. <u>Standard of Review</u>

In determining whether to grant a Rule 12(b)(6) motion to dismiss, a court must review the allegations in the Complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall*, 30 F.3d at 522. Nonetheless, Rule 8's requirement of a "short and plain statement" does not mean that a mere formulaic recitation of essential elements suffices as a well-pleaded Complaint. Indeed, to survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 697, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *see also McCleary-Evans v. Maryland Dept. of Transp, State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (dismissing plaintiff's complaint for failing to state a plausible claim for relief pursuant to Fed. R. Civ. P. 8(a)). Ultimately, in determining whether the Complaint is legally and factually sufficient, a court "need not accept legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

This means that a properly pled Complaint must present at least *some* factual support for each element of the claim, including facts supporting the elements of the *prima facie* case where such claim is built on circumstantial evidence. *Bass v. E. I. DuPont De Nemours & Co.*, 324 F.3d 761,

765 (4th Cir. 2003). The Complaint must not contain conclusory allegations, and must offer sufficient "factual enhancement" to allow the Court to infer more than the mere *possibility* that Plaintiff is entitled to the relief sought but, rather, to infer reasonably the *plausibility* that Plaintiff is entitled to the relief sought. *See Iqbal*, 556 U.S. at 678-9; *Twombly*, 550 U.S. at 557.

IV. <u>**Legal Argument**</u>

A. <u>**Plaintiff's First Claim for Relief Fails to Allege Plausible Claims for Race Discrimination and a Hostile Work Environment.**</u>

1. <u>**Discrimination Based on Race.**</u>

Plaintiff's Complaint fails to allege facts to suggest plausibly that TalentBridge discriminated against her because of her race—black, and thus her 42 U.S.C. § 1981 claim must be dismissed ("Section 1981"). The elements required to establish a *prima facie* case of race discrimination, and to assert a well-pleaded Complaint, are the same under Title VII and Section 1981. *See, e.g.*, *Gairola v. Va. Dep't of Gen. Servs.*, 753 F. 2d 1281, 1285 (4th Cir. 1985).

Section 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." To create a reasonable inference of Section 1981 race discrimination, the Complaint must allege that Plaintiff: (1) was a member of a protected class; (2) was qualified for her position of employment; (3) was subject to an adverse employment action based on race; and (4) people outside Plaintiff's protected class were not subject to similar adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). The Complaint must do more than merely assert that the defendant acted "with racial animus" or that the decision was made "because of [Plaintiffs'] race." *Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 488-89 (M.D.N.C. 2011). The Complaint must allege specific facts that support an inference of race discrimination by the defendant, establishing that race was a motivating

1142896 v1

factor in the adverse action. The reviewing Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, quoting *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555).

In *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-191 (4th Cir. 2010) [*aff'd sub. nom. Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012)], the Court granted the defendant's motion to dismiss the plaintiff's race discrimination claim based on the plaintiff's failure to plead specific factual allegations. The Court found that the plaintiff "conclusorily allege[d] that [he] was terminated based on his race" but failed to "assert facts establishing the plausibility of that allegation." *Id.* The Court also determined that the plaintiff did not include facts showing that he was actually similarly situated to his proposed comparator or that his protected status was the basis for the defendant's discrimination. Without more, the Court held, "the complaint's allegations of race discrimination do not rise above speculation." *Id.* A claim of disparate treatment based on race requires the comparison between two groups, and this Court cannot compare Plaintiff's treatment to those of others similarly situated based upon what Plaintiff has alleged, or really, failed to allege, in her Complaint.

Here, Plaintiff's Complaint fails to make more than mere conclusory allegations of race discrimination. Plaintiff does not even proffer a recitation of the *prima facie* elements of a Section 1981 violation—of the four elements, Plaintiff only alleges the first—that she is a member of a protected group because she is black/African-American. [Comp. ¶¶ 7, 18]. Her Complaint is devoid of any allegation that she was performing her job satisfactorily, or that she was treated less favorably than other TalentBridge employees. Her Complaint fails to provide any factual or legal basis to establish that TalentBridge was her "employer," or that any TalentBridge employee engaged in any conduct that constituted an adverse employment action. Instead, Plaintiff alleges that she was an

1142896 v1

employee of Driven Brands and that she suffered unjust treatment at the hands of her supervisor Smith, a Driven Brands employee, and her direct manager Brodnoski. [Compl. ¶¶ 1, 4-5].[5] Plaintiff does not even allege that TalentBridge terminated her, preferring the passive, nebulous allegation that her employment "was terminated." It is precisely these deficient forms of speculative, conclusory, unadorned "facts" that *Twombly* and its progeny have rejected.

Plaintiff's Complaint does not provide any basis to plausibly conclude that TalentBridge discriminated against Plaintiff on the basis of her race. The factual allegations purporting to substantiate her general allegations do little more than provide "the defendant harmed me" accusations that *Twombly* proscribes. These conclusory allegations epitomize impermissible speculation and do not amount to a short and plain statement of the claim, making the Complaint subject to dismissal pursuant to Rule 12(b)(6).

**2.** <u>**Hostile Work Environment.**</u>

Plaintiff's hostile work environment claim, just like her claim of race discrimination, fails to allege any facts that would support a *prima facie* case. To successfully allege a Section 1981 hostile work environment claim, which, as noted above, mirrors Title VII's *prima facie* elements, Plaintiff must plead facts to establish: (1) unwelcome conduct; (2) based on the plaintiff's protected status; (3) that was sufficiently severe to alter the plaintiff's conditions of employment; and (4) that some basis exists for imputing liability to the employer. *Covington v. Randolph Hosp., Inc.*, 147 F. Supp.3d 399, 403-04 (M.D.N.C. 2015) (dismissing plaintiff's Title VII claim of harassment pursuant to 12(b)(6), citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment, such as "simple teasing, offhand comments, and isolated incidents," is beyond the

---

[5] While Plaintiff does not allege that Brodnoski is a Driven Brands employee, given that the manager directed Plaintiff's work at Driven Brands, TalentBridge presumes the manager is also a Driven Brands employee [Compl.  ¶ 5]. TalentBridge affirmatively states that Brodnoski was not its employee at all times relevant to this action.

1142896 v1

purview of federal antidiscrimination statutes. *Faragher v. Boca Raton*, 524 U.S. 775, 787-788, 118 S. Ct. 2275 (1998) (internal citations omitted).

With respect to the third element of the *prima facie* case, in determining whether an environment was sufficiently hostile or abusive, a court must not look at the one incident in isolation but must instead:

> '[look] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-271, 121 S. Ct. 1508, 1510 (2001), *quoting Faragher*, 524 U.S. at 787-788. And importantly, "[t]he words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Bass,* 324 F.3d at 765 (affirming the 12(b)(6) dismissal of plaintiff's hostile work environment claim for failure to plead facts sufficient to show "severe or pervasive gender, race, or age based activity").

In *Covington*, the African-American plaintiff asserted a hostile work environment Title VII claim, alleging that there were "'racial bias comments' and 'colorism'" in the workplace, as well as that her supervisor once asked her "if she was intimidated by white people." 147 F. Supp.3d at 404. The Court, in granting defendant's 12(b)(6) motion to dismiss, explained that while the supervisor's comment may be "potentially insensitive, [the] isolated offhand comment," combined with plaintiff's other conclusory allegations, was "not severe enough to lead a reasonable person to perceive [her work environment] as hostile or abusive." *Id.,* citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 (stating that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not, by itself, create an objectively hostile

working environment); *see also Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753-54 (4th Cir. 1996) (finding that conduct of bumping into the plaintiff, putting a magnifying glass over the plaintiff's crotch, giving the plaintiff a kiss in a receiving line, and staring at the plaintiff while in the bathroom, pretending to lock the door, and saying, "Ah, alone at last," was not sufficiently severe to establish a hostile work environment). And a supervisor monitoring employee activity – conduct which most employers *expect* their supervisors to do -- does not form the basis of a harassing or hostile work environment. *Fisher v. Walgreen, Co*., No. 1:17-cv-225, 2018 U.S. Dist. LEXIS 133315, at *21 (W.D.N.C. Apr. 23, 2018).

The bar for whether alleged conduct meets the "severe or pervasive" standard is a high one. An employee must demonstrate that the workplace is "permeated with discriminatory intimidation, ridicule, and insult" to support a hostile work environment claim. *Squitieri v. Piedmont Airlines, Inc.*, No. 3:17-cv-441, 2018 U.S. Dist. LEXIS 25485, at *7 (W.D.N.C. Feb. 16, 2018). Ultimately, employees must expect to encounter conduct in the workplace that, while they may not like it, does not rise to this abusive level:

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers],". . . are not actionable under Title VII.

*Id.* at *6-7, *quoting E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations omitted). Further distilled, it is well-established that federal employment statutes are not "general civility code[s]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998 (1998).

Such is the case here, and Plaintiff's Complaint fails to state a claim for two important reasons: She fails to allege facts sufficient to support elements two and three of a *prima facie* hostile work environment claim by (1) failing to state enough facts for a reasonable person to infer that her workplace was hostile or abusive enough to affect her conditions of employment and (2) failing to allege a basis for imputing liability to TalentBridge. Even assuming, as the court must, that all of the allegations in Plaintiff's Complaint were true, Plaintiff does not plead that the alleged comments and monitoring were severe or pervasive humiliations. Instead, she claims that she was subjected to sporadic treatment, none of which on its face demonstrates a causal nexus between the conduct and her race. Such sporadic comments and non-threatening monitoring, even the bathroom encounters, as addressed in *Hopkins*, fail to create a cognizable hostile work environment claim. Indeed, Plaintiff fails to allege that Smith's conduct interfered with her work performance or productivity in any way. As in *Hopkins,* Plaintiff's Complaint does not contain facts sufficient to satisfy the level of "severe or pervasive" conduct that would support a hostile work environment claim.

But most critically for the purpose of this Motion to Dismiss, Plaintiff does not allege that TalentBridge, or any of its employees or managers, engaged in any discriminatory or harassing conduct. Instead, she alleges *only* that employees of Driven Brands engaged in the conduct she claims formed a hostile work environment. Accordingly, Plaintiff fails to meet the fourth element of the *prima facie* case, requiring the dismissal of Count I as to TalentBridge.

### B. Plaintiff's Second Claim for Relief Fails to Allege Plausible Claims for Retaliation.

There are three essential elements in a *prima facie* retaliation claim arising under Section 1981: (1) protected activity – opposition to discrimination or participation in the statutory complaint process; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *See, e.g.*, *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir. 1998);

1142896 v1

*Wrenwick v. Berry Global Films*, LLC, No. 3:17-cv-394, 2018 U.S. Dist. LEXIS 128104, at * 7 (W.D.N.C. July 31, 2018) (granting defendant's motion to dismiss since plaintiff failed to allege facts showing that he engaged in a protected activity and his termination was the result of such activity).

In order to establish unlawful retaliation, the employee must offer proof that the employer took an adverse action *because* the employee engaged in a protected activity. *Id.* Generalized speculation is insufficient to establish a causal link. *Iqbal,* 129 S. Ct. at 1941.

In *Amis v. Pekoske*, No. 3:20-cv-00541, 2021 U.S. Dist. LEXIS 37261, at *14 (W.D.N.C. Mar. 1, 2021), the plaintiff claimed his employer retaliated against him under Title VII by not hiring him for a new position after he made complaints of discrimination. In granting the defendant's motion to dismiss, the Court found that the plaintiff had not stated a plausible claim for relief, reasoning that: "A generalized statement alleging 'Plaintiff has made several EEO complaints' is not sufficient to push Plaintiff's claim of unlawful retaliation 'across the line from conceivable to plausible.'" *Id.*, *quoting Twombly*, 550 U.S. at 547.

The Court also noted that the plaintiff presented zero factual allegations regarding causation. For example, the plaintiff did not allege that the person who made the decision not to hire him knew about his prior discrimination complaints, nor did he include the timing between the complaints and the employment rejection such that the Court could evaluate the temporal proximity. *Id.*

Plaintiff's Complaint, like the Complaint in *Amis*, fails to allege sufficient facts to support her claim of retaliation. First, Plaintiff's claim of retaliation must be dismissed because she fails to allege any adverse employment action taken by TalentBridge against her. The Complaint does not assert that TalentBridge is Plaintiff's employer, nor does it even identify who terminated Plaintiff—

the Complaint only states in the passive voice that, "Plaintiff was unlawfully terminated." [Compl. ¶¶ 21, 28].

Second, while Plaintiff arguably asserts that she engaged in protected activity by reporting discrimination and the hostile work environment, she fails to link such activity to her termination. Plaintiff alleges that (1) she reported the "discrimination and racially hostile work environment to TalentBridge" [Compl. ¶ 14]; (2) that she was terminated "[s]hortly after making the complaint" [Compl. ¶ 15]; and (3) that she was "unlawfully discriminated and retaliated against on the sole basis of her race and there is no other legitimate nondiscriminatory reason for her unlawful termination." [Comp. ¶ 30]. Just like the plaintiff in *Amis*, Plaintiff does not allege that the unidentified person or entity who terminated her knew of her prior complaints, does not describe a causal nexus, and does not provide a definite timeframe between her allegedly protected activity and the termination. Plaintiff's bare and conclusory recitations of the elements of the *prima facie* case of retaliation, without more, do not create a plausible inference that a defendant terminated Plaintiff *because* she allegedly reported the alleged race discrimination. Having failed to establish any such inference, Plaintiff fails to state a claim for relief, and her retaliation claim must be dismissed. *Amis,* 2021 U.S. Dist. LEXIS 37261 at * 14.

## C. <u>Plaintiff's Fourth Claim for Relief Fails to Allege a Claim for Intentional Infliction of Emotional Distress.[6]</u>

Plaintiff's Fourth Cause of Action seeks damages from TalentBridge for "Intentional Infliction of Emotional Distress" ("IIED"). [Compl. ¶¶ 41-44]. Plaintiff's Fourth Cause of Action must be dismissed for two reasons: First, this state law claim is pre-empted because it is based on the same conduct underlying the federal Section 1981 claim, and Plaintiff must instead look to the statutory remedies provided by Section 1981. *See, e.g.*, *Rhodes v. Johnson*, 3:13-cv-00109, 2014 U.S. Dist.

---

[6]TalentBridge addresses Plaintiff's Fourth Claim before Plaintiff's Third Claim because the insufficiency of Plaintiff's Fourth Claim mandates dismissal of her Third Claim.

1142896 v1

LEXIS 76749, at *3 (W.D.N.C. June 5, 2014) (holding that the plaintiff's supplemental state law claims for intentional infliction of emotional distress and negligent retention and supervision were preempted because they were "based on the same conduct underlying the federal . . . claims."). Second, Plaintiff fails to allege sufficiently a *prima facie* case of intentional infliction of emotional distress. In order to survive a motion to dismiss, a claim for intentional infliction of emotional distress must allege sufficiently: "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (internal citations omitted). As discussed below, Plaintiff's Complaint fails to allege these elements.

1. **The State Law Claim is Pre-empted by the Federal Law Claims.**

Given that the Courts treat Section 1981 claims just as they do Title VII claims in the employment context, it follows that just as supplemental state law claims in a Title VII case are pre-empted when the underlying conduct for both the state and federal claims are the same, supplemental state law claims in a Section 1981 case should be pre-empted as well. *Rhodes*, 2014 U.S. Dist. LEXIS 76749 at *3;

Here, Plaintiff's alleged facts supporting her claim of intentional infliction of emotional distress are the same alleged facts as those supporting her Section 1981 claims. Therefore, Plaintiff's Section 1981 claims pre-empt her intentional infliction of emotional distress claim, and she must rely upon the separate statutory remedy of Section 1981 for her discrimination, harassment, and retaliation claims.

2. **The Complaint Fails to Allege "Extreme and Outrageous" Conduct by the Defendant TalentBridge.**

Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985), quoting the Restatement (Second) of Torts § 46, cmt. h (1965). Whether conduct rises to the level of "extreme and outrageous" is a question of law for the court. *Dai v. Univ. of N. Carolina at Chapel Hill*, No. 1:02-cv-224, 2003 U.S. Dist. LEXIS 15880, at *24-25 (M.D.N.C. Sept. 2, 2003) (citing *Lenins v. K–Mart Corp.*, 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990)).

In the employment context, the Court should evaluate "extreme and outrageous" conduct using an "extremely rigorous standard." *Thomas v. Northern Telecom*, 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000). Accordingly, courts in this state are "reluctant to find intentional infliction of emotional distress claims actionable." *Haburjak v. Prudential–Bache Sec., Inc.*, 759 F. Supp. 293, 302–03 (W.D.N.C. 1991). Instead, our Courts find that, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Chambers v. Ashley Furniture Indus.*, No. 3:10-cv-362, 2010 LEXIS U.S. Dist. LEXIS 126969, at * 27 (W.D.N.C. Nov. 9, 2010), *adopted by Order* (W.D.N.C. Dec. 1, 2010), *quoting Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, 123 (1986).

In *Hogan*, the Court did not find extreme or outrageous conduct "where a supervisor screamed at employees, called them names, cursed at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pain." *Id.* Generally, the rule is that "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." *Id.* at *28, *quoting Bratcher v. Pharmaceutical Product Dev., Inc.*, 545 F. Supp.2d 533, 545 (E.D.N.C. 2008).

1142896 v1

In the present case, Plaintiff alleges only that her Driven Brands' supervisor Smith "lowered her monitor to stare at Plaintiff" while she worked; followed Plaintiff into the restroom; complained that Plaintiff wouldn't communicate with her; complained that she couldn't see what was on Plaintiff's personal cell phone; addressed black employees by saying "yo;" and referred to African-American women as "girls." [Compl. ¶¶ 4, 8-11; 13]. Plaintiff also alleges that her supervisor at Driven Brands referred to Smith as a "warden." Plaintiff acknowledges that when she accused her supervisor of making a discriminatory remark when she used the "warden" comment, the supervisor immediately apologized. [Compl. ¶ 13]. None of these allegations nor any other allegations of Plaintiff's Complaint describes the requisite "extreme and outrageous conduct" to maintain a claim for intentional infliction of emotional distress.

And once more, Plaintiff fails to attribute any actions by TalentBridge that relate to her allegations of intentional infliction of emotional distress, thus failing to meet the first prong of the *prima facie* case. As such, just as Plaintiff's hostile work environment claim fails to rise to the requisite cognizable level, so does Plaintiff's intentional infliction of emotional distress claim, thus mandating dismissal of her fourth claim for relief.

3. **The Complaint Fails to Allege that Plaintiff Suffered From "Severe Emotional Distress."**

In addition to Plaintiff's failure to allege any "severe and outrageous conduct" by TalentBridge, the Complaint also fails to allege facts sufficient to show that Plaintiff suffered "severe emotional distress." Severe emotional distress is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In order to show severe emotional distress, a plaintiff must forecast medical documentation

1142896 v1

or "evidence of 'severe and disabling' psychological problems. . ." *Strickland v. Jewel*, 562 F. Supp. 2d 661, 676 (M.D.N.C. 2007), quoting *Waddle*, 331 N.C. at 85, 414 S.E.2d at 28. "*The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*" *Waddle*, 331 N.C. at 84, 414 S.E.2d at 27-28, quoting the Restatement (Second) of Torts, § 46 cmt. J (1965); *see also Swaim v. Westchester Acad., Inc.*, 170 F. Supp. 2d 580, 585 (M.D.N.C. 2001) (dismissing claim pursuant to Rule 12(b)(6) where plaintiff alleged only "mental anguish and pain and suffering," which allegations were held to be "exceedingly sparse" and which did "not allow an inference that [plaintiff] has suffered severe emotional distress.").

Plaintiff makes only rote, conclusory allegations that she experienced "great emotional and mental harm . . . the stress associated with the environment caused Plaintiff physical harm as well" and caused "Plaintiff's ongoing severe emotional distress." [Compl. ¶¶ 19, 43]. Plaintiff's general allegations that she suffered emotional harm fall short of the requisite condition required to sustain a claim for intentional infliction of emotional distress. These types of cursory allegations are insufficient for purposes of pleading severe emotional distress, and Plaintiff has failed to state a claim.

### 4. **Plaintiff's Failure to Allege either "Extreme and Outrageous" Conduct or "Severe Emotional Distress" is Fatal to Her Claim.**

In order to maintain a claim for emotional distress, Plaintiff must allege, without limitation, both "extreme and outrageous" conduct and "severe emotional distress." *Waddle*, 331 N.C. at 82, 414 S.E.2d at 27. The failure to sufficiently plead either of these essential elements is fatal to her claim. Since Plaintiff in the instant case has failed to allege either "severe and outrageous conduct" or "severe emotional distress," and in fact fails to allege that TalentBridge engaged in any conduct toward the Plaintiff whatsoever, the claim against TalentBridge should be dismissed pursuant to Rule 12(b)(6).

**D. Plaintiff's Third Claim for Relief Fails to State a Claim for Negligence or Negligent Hiring, Supervision, and Retention.**

1. **Negligence**

The common law tort of negligence requires a plaintiff to allege (and establish for recovery) three things—that the defendant owed plaintiff a legal duty; that the defendant breached that duty; and that such breach proximately caused the plaintiff's injury. *See, e.g.*, *Kietz v. Carlton*, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957). Notably, a violation of federal discrimination statutes cannot serve as the basis of a negligence claim. *See, e.g., Simpson v. Amylin Pharms., Inc.*, No. 1:11-cv-301, 2012 U.S. Dist. LEXIS 110362, at * 11 (W.D.N.C. Aug. 7, 2012) (finding that "Plaintiff chooses to simply ignore the apparently unanimous case law that a violation of Title VII cannot serve as a basis for a negligence (or gross negligence) claim.").

Plaintiff's negligence claim suffers from the same defects as her Section 1981 claims. As addressed previously, Plaintiff's alleged facts are conclusory and without supporting information. For example, Plaintiff never alleges that TalentBridge owed her a legal duty nor explains who at TalentBridge had knowledge of conduct she claims was negligent. Plaintiff pleads that, on a single occasion, she reported alleged misconduct to TalentBridge toward the end of her employment, but her Complaint fails to establish how this one report translates to TalentBridge having knowledge of her supervisor's and manager's "incompetence" at "all times relevant." [Compl. 14, 36]. Plaintiff claims that Defendants' negligent hiring, supervision, and retention of "incompetent employees" has caused her injuries, but does not claim that Defendants' negligence has. Thus, Plaintiff is missing two of the three elements of a *prima facie* case of negligence, in addition to an unverified Complaint devoid of any factual enhancement. Plaintiff fails to put TalentBridge adequately on notice of the

1142896 v1

exact claims against it, including the substance of the claims and their factual support, in violation of both *Twombly* and *Iqbal*. Further, analogizing Section 1981 to Title VII and relying upon *Simpson*, a discrimination claim cannot serve as the basis for a negligence claim. As such, her Complaint must be dismissed.

2.    **Negligent Hiring, Supervision, and Retention**

To maintain a claim for negligent hiring, supervision, and retention seeking vicarious liability against an employer, a plaintiff must first allege a separate underlying common law tort claim against the employee. *McLean v. Patten Cmtys., Inc.,* 332 F.3d 714, 719 (4th Cir. 2003). Indeed, the Fourth Circuit Court of Appeals has recognized that "North Carolina Courts will not hold an employer vicariously liable unless an employee has committed a cognizable wrong against the plaintiff." *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766,774 (4th Cir. 1997) (granting summary judgment in favor of defendant where plaintiff's claims of hostile work environment and intentional infliction of emotional distress were dismissed, leaving no other underlying tort).

For purposes of sustaining a negligent hiring, supervision, or retention claim, such "cognizable wrong" must be a common law tort, not a statutory tort.  *See, e.g.*, *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) (dismissal appropriate pursuant to Rule 12(b)(6) where claim for negligent supervision and retention was premised on an underlying statutory violations of Title VII and Section 1981). In addition, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to the plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Id.* at 707, *quoting Smith v. Privette*, 128 N.C. App. 490, 495, S.E.2d 395, 398 (N.C. App. 1998).

In *Chambers v. Ashley Furniture Indus.*, No. 3:10-cv-362, 2010 LEXIS U.S. Dist. 126969, at * 7-8 (W.D.N.C. Nov. 9, 2010), the plaintiff alleged claims of (1) discrimination in violation of

1142896 v1

North Carolina's Equal Employment Practices Act ("NCEEPA"); (2) discrimination, harassment, and retaliation in violation of Title VII; (3) discrimination, harassment, and retaliation in violation of Section 1981; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) negligent supervision and retention. The Court granted the defendant's motion to dismiss regarding the Title VII claim, the negligent infliction of emotional distress claim, and the intentional infliction of emotion distress claim, leaving only the plaintiff's Section 1981 and NCEEPA claims to support her negligent retention and supervision claim. In dismissing the plaintiff's negligent retention and supervision claim, the Court wrote that Fourth Circuit precedent required that the plaintiff allege that "an employee committed a common law tort." *Id.* at * 31. With the Court having dismissed her common law tort claims, and with only the statutory claims remaining, the plaintiff's claim of negligent retention and supervision could not survive.

In support of its decision, the Court cited as binding precedent *McLean v. Patten Communities, Inc.*, 332 F. 3d 714 (4th Cir. 2003), for the proposition that, in the absence of a common law tort, a claim for negligent retention and supervision claim must fail. *Id.* at * 30. *McLean* held that neither Section 1981 nor the NCEEPA qualifies as a common law tort to support a claim of negligent retention and supervision. *Id.*; *McLean*, 332 F.3d at 719.

Plaintiff cannot maintain her claim for negligent hiring, supervision, and retention. First, as with her other claims, Plaintiff does not allege that TalentBridge was her employer. Moreover, Plaintiff does not allege, as required by *Jackson*, that TalentBridge had any knowledge of her manager's or supervisor's alleged incompetency prior to their alleged misconduct. *Jackson*, 608 F. Supp. 2d at 707. Most critically, Plaintiff has not, and cannot, allege that TalentBridge hired, recruited, supervised, or controlled any of the employees that she claims discriminated against her,

contributed to the alleged hostile work environment, or who otherwise allegedly mistreated her in any fashion.

Second, Plaintiff alleges only two common law tort claims—her intentional infliction of emotional distress claim and negligence. Compl. ¶¶ 84-88; 33-40. The IIED and negligence claims, however, fail to state legally cognizable tort claims against TalentBridge. Specifically, the Complaint fails to allege sufficiently the elements of these two claims, as discussed in Section IV.C. and IV.D.1, above. Without the support of an underlying common law tort claim, Plaintiff's Negligent Hiring, Supervision, and Retention claim necessarily fails, and must be dismissed.

## V.     CONCLUSION

For the reasons stated above, Defendant TalentBridge respectfully requests that the Court dismiss Plaintiff's Complaint, with prejudice.

This the 16th day of July, 2021

JOHNSTON, ALLISON & HORD, P.A.

 s/David E. Stevens
David E. Stevens, NC State Bar #54706

s/Mary Fletcher K. Mullikin
Mary Fletcher K. Mullikin, NC State Bar #47864
dstevens@jahlaw.com; mmullikin@jahlaw.com
1065 East Morehead Street
Charlotte, NC 28204
Telephone: (704) 332-1181
Facsimile:  (704) 376-1628
*Attorneys for Defendant TalentBridge, Inc.*

1142896 v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the **DEFENDANT EMPLOYEE RELATIONS ASSOCIATES, INC. d/b/a TALENTBRIDGE'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** was electronically filed with the Clerk of Court using the CM/ECF system and sent by U.S. mail to:

<table>
<tr><td>Alesha S. Brown<br>Justice in Action Law Center<br>521 Briar Creek Road<br>Charlotte, NC 28205<br>*Attorney for Plaintiff*</td><td>Driven Brands Shared Services, LLC<br>c/o Josiah Garton, Esq.<br>440 South Church St., Suite 700<br>Charlotte, NC 28202<br>*Attorney for Defendant Driven Brands Shared Services, LLC*</td></tr>
</table>

Respectfully submitted, this  16th day of July, 2021.

JOHNSTON, ALLISON & HORD, P.A.

s/David E. Stevens
David E. Stevens, NC State Bar #54706

s/Mary Fletcher K. Mullikin
Mary Fletcher K. Mullikin, NC State Bar #47864
dstevens@jahlaw.com; mmullikin@jahlaw.com
1065 East Morehead Street
Charlotte, NC 28204
Telephone: (704) 332-1181
Facsimile:  (704) 376-1628
*Attorneys for Defendant TalentBridge, Inc.*